**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Crim. Action No. 09-0276 (JR) |
| | : |
| STEWART DAVID NOZETTE, | : |
| | : |
| Defendant. | : |

### MEMORANDUM

Defendant Stewart David Nozette is charged with attempted espionage. On October 19, 2009, the FBI conducted a search of his home, his car, and his person pursuant to a warrant. Nozette moved [Dkt #30] to suppress the fruits of that search, arguing that the affidavit supporting the warrant had failed to establish probable cause for the searches. I denied the motion in open court on February 17, 2010, and said I would issue a written statement of my reasons. This is that statement.

In reviewing a warrant application, "[t]he task of the issuing magistrate is simply to make a practical, common-sense determination" of whether probable cause exists. Illinois v. Gates, 462 U.S. 213, 238 (1983). In turn, "the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." Id. at 238-39.

### Home Search

Probable cause to search a residence exists when "there is a fair probability that contraband or evidence of a crime will

be found in a particular place." Id. at 238.  "[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982).  "A magistrate may infer a nexus between a suspect and [evidence in] his residence, depending upon the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." United States v. Williams, 544 F.3d 683, 687 (6th Cir. 2008).

The affidavit supporting the search gave substantial details about the FBI's "false flag" meetings with Nozette, details that the government argued supplied probable cause to believe that Nozette had committed crimes.  See Aff. ¶¶ 42-63, attached to Mem. in Opp.  Nozette argued that whatever inference these meetings may have permitted as to his guilt, they did not establish probable cause to believe that he had stored classified material in his home.  He argued that, in the false flag conversations, he specifically and repeatedly denied possessing any classified documents (suggesting instead that any classified material he could supply would be derived from his memory).

Proof of probable cause that a person committed a crime can help support a search of that person's home for crime-related

items, if such items are typically stored by criminals in their homes.  See, e.g., United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006) ("One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home); United States v. Laury, 985 F.2d 1293, 1313-14 (5th Cir. 1993); United States v. Jenkins, 901 F.2d 1075, 1080-81 (11th Cir. 1990).  The mere inference that such items are typically stored in homes is insufficient without more to supply probable cause, see Jenkins, 901 F.2d at 1081, but additional support, such as statements from experienced law enforcement officials that the items to be found are typically stored in homes, can add enough weight to create probable cause.  See, e.g., id. at 1081; Abboud, 438 F.3d at 572; Laury, 985 F.2d at 1313-14.

     Here, there was considerable additional support for the search.  First, in a prior search of Nozette's home executed in 2007, agents had found computers containing restricted technology.  Second, during the "false flag" process, the agents received from Nozette a "dead dropped" thumb drive containing classified information as well as material containing typewritten text.  It was reasonable to expect that the computer and typewriter equipment Nozette used would have been stored in his home.  Third, the affiant was a seven-year veteran of the FBI who

had previously worked as a state court prosecutor in Ohio for four years, so his experience supported the reasonableness of relying on his belief that a search would turn up evidence and/or classified information.  See Aff. ¶ 1.  Finally, the complex nature of the scientific classified information at issue belied Nozette's assertion that he had memorized it all.  Nozette attacked each of these elements as inadequate in isolation, but their combined force was sufficient for me to find that the magistrate had a substantial basis for concluding that probable cause existed.

### Auto Search

Nozette objected to the search of his vehicle.  See Mot. 7.  The search was supported by the affiant's statement that Nozette drove his car to the "dead drop" site four times.  Resp. 9 n.9.  Further, affiant stated that Nozette had used the car to transport items he picked up from and dropped off to the agents, including a thumb drive containing classified information.  Id.  The affidavit therefore established probable cause that evidence, including material picked up from the dead drop site, might be held in Nozette's car.

### Search of Nozette's Person

Nozette mentioned the search of his person only in passing.  The search was done incident to his lawful arrest and

was thus itself lawful.  See Chimel v. California, 395 U.S. 752, 763 (1969).

                                        JAMES ROBERTSON
                              United States District Judge